A02A1462. TUCCI v. THE STATE.
(565 SE2d 831)

ELDRIDGE, Judge.

After a bench trial in the City Court of Atlanta, Laura Tucci was found guilty of leaving the scene of an accident, which charge arose when Tucci, driving a rental car on the I-85/I-75 connector near Butler Street, failed to see another vehicle traveling in her "blind spot"; Tucci attempted to change lanes, hitting the bumper of the other vehicle before the driver thereof used the car horn. She appeals on additional facts as follows.

After hearing the horn of the other vehicle, Tucci swerved back into her lane. The driver of the damaged vehicle pulled beside Tucci and motioned for her to pull over. The driver testified that Tucci "looked at me and she said, I'm sorry, and she kept driving." The driver pulled over and contacted the police.

When Tucci arrived at her destination, she observed damage to her rental vehicle from the encounter on I-85/I-75. Two days later, Tucci telephoned an officer in the Hit and Run Department of the Atlanta Police Bureau, because "she wanted to find out what to do." The officer instructed Tucci to come to his office and, when she did so, issued her a citation for leaving the scene of an accident.

Tucci subsequently entered a plea of "not guilty." At the bottom of the plea form, Tucci waived her right to a jury trial. In addition, Tucci affirmed under oath that she was "willing to proceed without a lawyer and I understand that I am waiving my right to have a lawyer represent me."

At trial, the facts as related above were not in dispute. Tucci admitted the act as testified to by the victim and the facts as described by the officer from Hit and Run. Her sole defense was lack of knowledge, i.e., criminal intent. She testified

> My plea of not guilty is due to — as I understand the law, I am not guilty of the charge due to the fact that I was unaware that I was actually committing that charge. I had come over uneven pavement. That area was under construction. . . . I checked my rearview and my side mirrors and

was unaware of the blind spot of the vehicle because it was not my vehicle. . . . When I came over the uneven pavement, not knowing at all that there was anybody alongside of me, my tires — I heard her beep her horn. Again, I thought I had nearly missed her. So I changed back into the lane I had come from. I did see her pull up along to the right side of me. I took my eyes off the road for just a second. I know you can't really do that traveling at that speed on 85 in heavy traffic. I saw that she motioned something. I couldn't tell what she was saying or what her motion was. I did, of course, turn to say sorry and kept proceeding forward. . . . I did not at all know that our bumpers had touched. . . . [A]s soon as I realized that once I arrived at the airport and had picked up my friend, we were walking towards the car and saw that there had been damage. I did everything I could that day before leaving Atlanta to try to find out what it was I was supposed to do that I had not done.

The trial court concluded that Tucci was guilty as charged, finding, "Miss, if there is any question, I think you should stop. You admitted, by your own testimony, there was a question that you had cut quickly from one lane to the other. This lady said she attempted to stop you, and you just wouldn't stop. You should have stopped if you had any question about this at all." *Held*:

1. Tucci claims that the record does not show she knowingly and voluntarily waived her right to counsel and proceeded to trial pro se.[1] A review of the record requires us to agree with her assertion.

A defendant entering a guilty plea or going to trial on an offense which carries a penalty of imprisonment has a constitutional right to counsel that can be waived only by voluntary and knowing action.[2] Thus, there is a two-prong requirement to establish waiver. When pro se representation at trial is at issue, no "magic language" need be used in order for a waiver of counsel to be valid, and the trial court does not have to ask any particular questions. "The *record* need only reflect that the accused was [made] aware of the dangers of self-

---

[1] We reject the appellee's attempt to reframe the issue into one of entitlement to court-appointed counsel for one not sentenced to actual prison time. Whether or not – after the fact – one was entitled to court-appointed counsel in no way relieves the State from showing a pre-trial waiver of counsel that passes constitutional muster. See *Kirkland v. State*, 202 Ga. App. 356, 357 (414 SE2d 502) (1991). Even the indigent may be able to obtain a trial attorney, whether through family aid, pro bono legal contacts, or otherwise.

[2] *Braswell v. State*, 240 Ga. App. 510 (1) (523 SE2d 904) (1999).

representation and nevertheless made a knowing and intelligent waiver."[3]

Here, the plea form initialed by Tucci under oath stated only that she was willing to proceed without a lawyer and that she was waiving such right. While this satisfies the "voluntary" requirement for waiver, it does not address the "knowing" prong in a pro se representation at trial context. To that end, there is absolutely nothing in the form, or in the record as a whole, to reflect that Tucci was made aware of the dangers of proceeding pro se at trial. Accordingly, a valid waiver of counsel was not established in this case.

This Court recognizes and appreciates the tremendous case loads in the courts below, especially in those courts dealing with traffic offenses and other misdemeanors where sheer volume may make waiver forms not only attractive but necessary. However, our precedent has made it abundantly clear that, as far as pro se defendants *who go to trial* are concerned, waiver forms which permit only the conclusion that a defendant has knowingly and voluntarily chosen to waive counsel in the entry of a *plea* (guilty or not guilty) are simply insufficient; such forms must also include information by which this Court can determine that the "knowing" prong has also been satisfied when a defendant *goes to trial* pro se, i.e., that such defendants have been made aware of the dangers of pro se trial representation. That is not to say that forms — with hopefully a follow-up affirmation by the court on the record just prior to trial (jury or bench) — may not indeed provide the evidentiary basis from which a valid waiver may be determined in a pro se representation at trial context. But the form used here was a standard "knowing and voluntary" plea form and, as in so many jurisdictions where a pro se defendant opts for a trial, not a guilty plea,

> [t]he form does not go far enough. In order for the State to use a pretrial waiver form to show that a defendant has intelligently elected to represent himself [at trial] after being advised of his right to counsel and the "dangers" of waiver, the form should outline those pertinent dangers: such as (1) the possibility of a jail sentence; (2) the rules of evidence will be enforced; (3) strategic decisions with regard to voir dire and the striking of jurors must be made by defendant; (4) strategic decisions as to the calling of witnesses and/or the right to testify must be made by defendant; and (5) issues must be properly preserved and tran-

---

[3] (Citation omitted; emphasis in original.) *Brooks v. State*, 243 Ga. App. 246, 248 (1) (a) (532 SE2d 763) (2000); *Simpson v. State*, 238 Ga. App. 109, 112 (517 SE2d 830) (1999). Accord *Wayne v. State*, 269 Ga. 36, 38 (495 SE2d 34) (1998).

scribed in order to raise them on appeal. [In other words, a] proper waiver form should contain the warnings, themselves, not just conclusions. Also, ideally, the form should be signed by the defendant and by the trial court.[4]

In addition, a simple statement of possible defenses, i.e., justification, alibi, misidentification, and reliance on the presumption of innocence, should be included.[5]

In sum, we would urge evaluation of the forms used in light of the two-prong showing that must be made in order to establish a valid waiver of counsel by a pro se defendant who opts for trial.[6] Questions contained in forms and routinely asked prior to the entry of a guilty plea in order to satisfy the "knowing and voluntary" constitutional standard may just as easily be developed to ensure constitutional compliance in situations such as the instant one. Clearly, reversal based on an insufficient form is not conducive to the orderly administration of justice.

2. Moreover, we cannot find harmless error under the facts of this case. The record shows that Tucci had telephone logs documenting her attempts to contact the police immediately after she discovered the damage to her vehicle; apparently, however, Tucci did not know how to introduce such into evidence for consideration by the trial court. In addition, immediately after becoming aware of the accident, it appears that Tucci approached a police officer in order to ask what steps she should take to rectify the situation; Tucci had this officer's name, but apparently was unaware of her ability to subpoena him. This additional evidence would have gone to establish Tucci's sole defense of lack of knowledge, i.e., the criminal intent necessary to sustain conviction pursuant to OCGA § 40-6-270 (c) (1). Accordingly, we cannot say that the error did not contribute to the judgment as per the standard of *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).[7]

*Judgment reversed. Smith, P. J., and Ellington, J., concur.*

---

[4] (Citations and emphasis omitted.) *Brooks v. State*, supra at 249 (1) (a) (i), n. 1.

[5] See *Hamilton v. State*, 233 Ga. App. 463, 467 (1) (b) (504 SE2d 236) (1998).

[6] See id. at 464, n. 1; *Woods v. State*, 235 Ga. App. 894, 895-896 (510 SE2d 848) (1999); *Rutledge v. State*, 224 Ga. App. 666, 669 (3) (482 SE2d 403) (1997); *Cook v. State*, 227 Ga. App. 674 (490 SE2d 181) (1997). See also *Moore v. State*, 250 Ga. App. 75, 77 (550 SE2d 667) (2001); *Spears v. State*, 247 Ga. App. 626 (545 SE2d 36) (2001).

[7] In a separate enumeration of error, Tucci claims that the trial court, by concluding Tucci should have stopped if she had "any question" about what had occurred, failed to determine that she acted with the requisite criminal intent under OCGA § 40-6-270 (c) (1), i.e., that she *knowingly* left the scene of the accident. The resolution of this claim is unnecessary for the disposition of this appeal. However, we note that a more explicit finding of criminal intent would have negated this issue.

Decided May 21, 2002.

*Tara D. Dickerson*, for appellant.

*Joseph J. Drolet, Solicitor-General, Andrea D. McGee, Assistant Solicitor-General*, for appellee.